IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH J. RICHARDET,<br>LESLIE RICHARDET,<br>EUGENE B. STURM, and<br>VIRGINIA C. STURM,<br><br>        Plaintiffs,<br><br>vs.<br><br>MURDALE TRUE VALUE, INC.,<br>and KEVIN D. HARRISON,<br><br>        Defendants. | Case No. 07-cv-0368-MJR |

## MEMORANDUM and ORDER

REAGAN, District Judge:

    A.     Introduction

    A January 2007 vehicular collision on a bridge between Kentucky and Illinois resulted in injuries to the drivers and passengers of two cars, all four of whom sued the driver of a truck (Kevin D. Harrison) and his employer (Murdale True Value) in this United States District Court. The lawsuit culminated in a five-day jury trial before the undersigned Judge in March 2009.

    The jury returned verdicts in favor of the four Plaintiffs and against both Defendants in an amount totaling $113,000. Judgment was entered accordingly on March 13, 2009. Six days later, Plaintiffs moved for a new trial. The parties timely and fully briefed that motion by May 11, 2009. For the reasons stated below, the Court must deny the motion for new trial.

B. <u>Analysis</u>

The jurors returned separate verdicts for the four Plaintiffs as follows. For Kenneth Richardet, the jury awarded $118,654 in damages less $97,654 (based on failure to mitigate damages) for $21,000 in total recoverable damages. For Leslie Richardet, the jury awarded $24,000 – comprised of $14,000 in pain and suffering (past and future) plus $10,000 in reasonable medical expenses. For Eugene Sturm, the jury awarded $27,000 – comprised of $7,000 in pain and suffering (past and future) plus $20,000 in reasonable medical expenses. For Virginia Sturm, the jury awarded $41,000 – comprised of $15,000 in pain & suffering (past and future) plus $26,000 in reasonable medical expenses.

Plaintiffs maintain that each of these verdicts is inadequate. More specifically, Plaintiffs argue that a new trial is needed for five reasons (Doc. 88):

> (1) Kenneth Richardet's verdict was inadequate and against the weight of the evidence, because it failed to reflect "the uncontroverted testimony of his primary treating physician with respect to the issue of causation" and damages;
>
> (2) Leslie Richardet's verdict was inadequate and against the clear weight of the evidence, because it failed to reflect "the uncontroverted testimony of her primary care physician with respect to the issue of causation" and damages;
>
> (3) Eugene Sturm's verdict was inadequate and against the weight of the evidence, because it failed to reflect "the uncontroverted testimony of his primary care physician with respect to the issue of causation" and damages;
>
> (4) Virginia Sturm's verdict was inadequate and against the weight of the evidence, because it failed to reflect "the

uncontroverted testimony of her primary care physician with respect to the issue of causation" and damages; and

(5) The four verdicts were "unfair and factually inconsistent."

Plaintiffs maintain, based on the verdicts, that the jury disregarded unrebutted testimony by Plaintiffs' own treating physicians establishing a causal relationship between the accident and Plaintiffs' injuries, that the jurors ignored testimony regarding the nature and extent of those injuries (e.g., permanent disability or extensive pain and suffering), and that the jury credited unreliable testimony of defense experts (specifically, Dr. Atkinson who testified that Virginia Sturm's hip problem was caused by psoriatic arthritis, not the car crash).

Plaintiffs' disappointment with the verdicts is understandable. They presented extensive evidence and recovered only a fraction of the damages they sought from the jury. But the record before the Court does not support the grant of a new trial. Analysis begins with reference to the applicable Federal Rule of Civil Procedure, Rule 59, which is rather unhelpfully worded.

Rule 59(a) authorizes district courts to grant a new trial on all or some issues following a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." The United States Court of Appeals for the Seventh Circuit has observed that "Rule 59(a), in a bit of a circular way, allows new trials in cases where new trials have been traditionally allowed at law." *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 543 (7th Cir. 2003).

Historically, federal courts have recognized the propriety of a new trial if the verdict runs contra to the clear weight of the evidence, the amount of the verdict shocks the conscience, newly discovered evidence has come to light, the verdict was unfairly influenced by improper conduct by the court or counsel, the verdict was facially inconsistent, or a new trial is needed to prevent a miscarriage of justice. *See* Baicker-McKee, Janssen & Corr, FEDERAL CIVIL RULES HANDBOOK (2009)(pp. 1141-1144). *See also Romero v. Cincinnati, Inc.*, 171 F.3d 1091, 1096 (7th Cir. 1999); *Sokol Crystal Products, Inc. v. DSC Communications Corp.*, 15 F.3d 1427, 1432 (7th Cir. 1994).

Traditionally, new trials have <u>not</u> been permitted as a means for a dissatisfied litigant to take a second bite of the apple or solely because the trial judge might have awarded a different amount of damages. *Id.;* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE §§ 2806-2807 (2009). However, the district judge who "heard the same testimony as the jury" and "observed the witnesses' demeanor just as the jury did" can assess the evidence, including the witnesses' credibility. *Thomas v. Stalter*, 20 F.3d 298, 304 (7th Cir. 1994). Bearing those standards in mind, we turn to the motion for new trial in the case at bar.

First, the Court rejects Plaintiffs' claim that the verdicts in this case are against the clear weight of the evidence. The Seventh Circuit has declared that a verdict is contrary to the weight of the evidence only if no rational jury could have rendered the verdict. *Staub v. Proctor Hosp.*, 560 F.3d 647, 658 (7th Cir. 2009). *Accord King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006).

Put another way, a jury's verdict should not be set aside "if a reasonable basis exists in the record to support that verdict." *Carter v. Chicago Police Officers*, 165 F.3d 1071, 1079 (7th Cir. 1998). *See also Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir. 2000). And jury verdicts deserve particular deference in cases involving "simple issues but highly disputed facts." *Moore ex rel. Estate of Grady v. Tuleja*, 546 F.3d 423, 427 (7th Cir. 2008), *cert. denied*, 129 S.Ct. 1684 (2009).

That is precisely the situation here. The facts of this vehicular collision were not complicated. Kevin Harrison was driving a 1998 Ford truck owned by his employer, Murdale True Value, north on Interstate 24. Harrison was traveling across a bridge spanning the Ohio River. When Harrison tried to slow the truck, the rear brakes failed, causing an accident in which both the Sturms' vehicle and the Richardets' vehicle were struck from the rear. Specifically, Harrison's truck hit the car driven by Virginia Sturm (a silver Corvette), and the Sturms' vehicle hit the car driven by Kenneth Richardet (a red Corvette). Leslie Richardet described the impact of the collision as a "terrible force."

The truck left 385 feet of skid marks (*see* stipulations at Doc. 71, read to jury at trial). Witnesses testified that Harrison was driving between 55 and 70 miles per hour at the time of the accident. Emergency responders arrived on the scene. Extensive medical records, accident photographs, and other documents were admitted at trial.

All four Plaintiffs testified, as did nine physicians and a physical therapist.[1]

Defendants admitted they "were negligent and caused the accident" but vigorously disputed the nature and extent of Plaintiffs' injuries (*see* Docs. 68, 69 and 71). The verdicts reveal that the jurors credited Defendants' evidence regarding the nature and extent of the Plaintiffs' injuries.

And there is a reasonable basis in the record for each of the four verdicts. For instance, Kenneth Richardet sustained a shoulder injury in the accident. The jurors heard Kenneth's testimony regarding the injury, including his recollections of the impact during the crash, the fact he sought no treatment at the scene, the fact he drove himself from the accident the scene to the hospital to look for his wife and Mrs. Sturm, the fact he had his shoulder x-rayed once at the hospital, and the doctor visits and surgeries that followed. Relevant medical bills were admitted.

Evidence was presented regarding Kenneth's physical therapy, the home exercise program prescribed for him, and the fact he elected to not comply with his home regimen on some days (e.g., when he was tired after work). Kenneth made no wage loss claim and continued working as his shoulder healed.

The jurors heard Dr. Schwarze's testimony regarding the nature of the

---

[1] Testimony regarding Plaintiffs' treatment and injuries was presented to the jurors (via live testimony or deposition) from (1) Dr. Daniel Schwarze, (2) Dr. J. David Dahm, (3) Dr. Michael Boland, (4) Dr. Joseph Cangelosi, (5) Dr. Connie Gibstine, (6) Dr. Robert Kramer, (7) Dr. Thomas Lee, (8) Dr. David Fagan, (9) Scott Schuessler, a physical therapist, and (10) Dr. John Atkinson.

injury and the facts affecting the duration of any disability. Kenneth testified that over time his range of motion increased. By January 2009, he was feeling very little pain and was discharged from physical therapy. Dr. Schwarze released Kenneth to full activities without restrictions by the end of January 2009.

Plaintiffs' reply brief notes that Kenneth's medical bills totaled $101,154.82, a figure presented to the jury. Indeed, Plaintiffs' sought over $300,000 in damages from the jury and recovered only $21,000. But that variance does not warrant a new trial. The jury was free to believe or *not* believe all or part of Kenneth Richardet's testimony. The jury was free to accept or reject the various pieces of evidence adduced regarding his damages.

On the verdict form for Kenneth (Doc. 83), the jurors found Kenneth's damages to include two components: (1) $17,500 for pain and suffering and (2) $101,154 for medical expenses. From this total of $118,654 in damages proximately caused by the collision, the jurors deducted $97,654 based on their determination that Kenneth failed to mitigate his damages, producing total recoverable damages of $21,000. This was a perfectly rational conclusion for the jurors to draw, based on the evidence properly admitted. This total clearly is less than Plaintiffs requested but also is *more* than Defendants argued should be awarded to Mr. Richardet.

Nothing about this total is shocking, inadequate, facially inconsistent or contrary to the evidence. The same is true as to the other three verdicts. Each is well supported by the evidence properly admitted at trial.

As to Leslie Richardet, Defendants adduced evidence challenging whether the accident was the proximate cause of the injuries she claimed. Mrs. Richardet testified regarding a shoulder injury she suffered in the collision. She was not treated for that injury until 56 days after the accident. Moreover, the physical therapy course she undertook was focused on neck and back pain, not shoulder pain, as attested by her physical therapist, Scott Schuessler, at trial. The jury was entitled to credit this evidence rather than Mrs. Richardet's primary care physician.

Likewise, Defendants presented evidence regarding the mouth, nose and lower back injuries which Mr. Sturm alleged resulted from the accident. Mr. Sturm's own treater, Dr. Dahm, testified that some of the nose and breathing problems *predated* the accident. Immediately after the accident, Mr. Sturm told first responders that he was not hurt. And although Mr. Sturm testified that his teeth were jammed up into his jaw by the collision, the jurors saw a photograph taken at the scene in which Mr. Sturm had his sunglasses in his mouth, either chewing on them or just resting them on the teeth allegedly badly injured just moments earlier.

Additionally, Mr. Sturm described his pain post-accident as being located at the base of his neck and between his shoulder blades, not in his lower back. So the jurors had a reasonable basis to disbelieve testimony regarding his significant lower back injuries. Plus five months after the accident, Mr. Sturm described his ability to undertake physical activities as "the best" (Doc. 91, Exh. J). Plenty of evidence regarding the extent of these injuries supports the jurors' verdict for Mr. Sturm.

The same holds true for the jurors' verdict for Virginia Sturm. Properly admitted evidence (upon which the jury could reasonably base their verdict) challenged Plaintiffs' position as to Mrs. Sturm's injuries. By way of example, Mrs. Sturm presented evidence regarding a hip injury and hair loss, both allegedly resulting from the accident. But the medical testimony fell far short from causally linking the hair loss to the collision, Dr. Gibstine testified the hair loss would resolve itself, and Dr. Gibstine explained that this "Telogen Effluvium" (hair shedding) is a common condition which often results from simple hormonal changes or stress (see Doc. 91-13, Exh. L).

As to Mrs. Sturm's hip condition, medical records introduced by Defendants at trial revealed that she did not complain of hip pain in January or February of 2007. In June 2007, when seen by one of her treating physicians (Dr. Zippay of Tesson Heights Orthopedics), Mrs. Sturm had a full range of motion in her hips (see Exh. N to Doc. 91). Moreover, Dr. Atkinson testified at trial that Mrs. Sturm's hip pain and hip replacement surgery were caused (and necessitated) by something *other than* the car accident – *i.e.*, psoriatic arthritis. The jurors were free to reject Mrs. Sturm's testimony and credit Dr. Atkinson's testimony. They did not have to, but they could. No new trial is warranted where a reasonable basis exists for the verdicts, and that basis exists here.

Plaintiffs emphasize that certain of their treating physicians' testimony was "uncontroverted." As the above discussion indicates, that is not entirely true. But even assuming it *were* true that Plaintiffs' treating doctors' testimony was uncontroverted, the jurors were not required to accept it. The Seventh Circuit has pointed this out where

The same holds true for the jurors' verdict for Virginia Sturm. Properly admitted evidence (upon which the jury could reasonably base their verdict) challenged Plaintiffs' position as to Mrs. Sturm's injuries. By way of example, Mrs. Sturm presented evidence regarding a hip injury and hair loss, both allegedly resulting from the accident. But the medical testimony fell far short from causally linking the hair loss to the collision, Dr. Gibstine testified the hair loss would resolve itself, and Dr. Gibstine explained that this "Telogen Effluvium" (hair shedding) is a common condition which often results from simple hormonal changes or stress (see Doc. 91-13, Exh. L).

As to Mrs. Sturm's hip condition, medical records introduced by Defendants at trial revealed that she did not complain of hip pain in January or February of 2007. In June 2007, when seen by one of her treating physicians (Dr. Zippay of Tesson Heights Orthopedics), Mrs. Sturm had a full range of motion in her hips (see Exh. N to Doc. 91). Moreover, Dr. Atkinson testified at trial that Mrs. Sturm's hip pain and hip replacement surgery were caused (and necessitated) by something *other than* the car accident – *i.e.*, psoriatic arthritis. The jurors were free to reject Mrs. Sturm's testimony and credit Dr. Atkinson's testimony. They did not have to, but they could. No new trial is warranted where a reasonable basis exists for the verdicts, and that basis exists here.

Plaintiffs emphasize that certain of their treating physicians' testimony was "uncontroverted." As the above discussion indicates, that is not entirely true. But even assuming it *were* true that Plaintiffs' treating doctors' testimony was uncontroverted, the jurors were not required to accept it. The Seventh Circuit has pointed this out where

the issue crops up repeatedly, in the employment discrimination context. For instance, in *Harvey v. Office of Banks and Real Estate*, 377 F.3d 698, 712 (7th Cir. 2004), the Court made this point: "The defendants are off base in arguing that because the testimony of their officers … was not contradicted directly, the jury had to accept it. The jury may have thought them liars. It is the prerogative of a jury … to disbelieve uncontradicted testimony unless other evidence shows that the testimony must be true." *Id.*, *quoting Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 630 (7th Cir. 1996).

Similarly unavailing is Plaintiffs' assertion that the verdicts are inconsistent. "A party claiming that inconsistent verdicts have been returned is not entitled to a new trial 'unless no rational jury could have brought back' the verdicts that were returned." *Pearson v. Welborn,* 471 F.3d 732, 739 (7th Cir. 2006), *quoting Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005). Here, as in *Pearson*, Plaintiffs have not demonstrated "that the jury's verdict is irreconcilable with the evidence," dooming the argument that inconsistent verdicts require a new trial.

C. Conclusion

There was a rational basis for each of the four verdicts herein. The verdict amounts do not "shock the conscience." No new evidence has come to light. The verdicts were not "unfair." The four verdicts were neither inconsistent with each other nor inconsistent with the evidence. Plaintiffs have demonstrated, and the record contains, no basis on which to grant a new trial.

Therefore, the Court **DENIES** Plaintiffs' March 19, 2009 motion for new trial (Doc. 88).

IT IS SO ORDERED.

DATED this 1st day of June 2009.

s/ *Michael J. Reagan*
MICHAEL J. REAGAN
United States District Judge